### In re ALGONQUIN ELECTRIC CO., Inc.

### BOYNTON et al. v. STATE OF NEW YORK.

#### No. 43.

Circuit Court of Appeals, Second Circuit.

Nov. 7, 1932.

Tolbert Ewen & Patterson, of New York City (Ward V. Tolbert and John Ewen, both of New York City, of counsel), for appellants.

John J. Bennett, Jr., Atty. Gen. (Robert P. Beyer, Dep. Asst. Atty. Gen., of counsel), for the State of New York.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The bankrupt, Algonquin Electric Company, was a Delaware corporation. On January 7, 1927, it obtained a license to do business in the state of New York. On January 28, 1928, a petition in bankruptcy was filed against it and on March 28, 1928, an adjudication in bankruptcy followed. The question before us is whether the District Court properly determined the amount of franchises taxes and license fees claimed by the state of New York.

■ The bankrupt was organized to take over and eliminate two New York corporations. On January 6, 1927, its president made an affidavit that it would commence business in New York on that date. The affidavit was filed with the State Corporation Tax Bureau pursuant to law. One of the New York corporations which owned the property and business to which the Delaware company was to succeed conveyed to it certain real property situated at Poughkeepsie, N. Y., by deed dated January 15, 1927, and recorded January 25, 1927. On January 15, 1927, this New York corporation executed a bill of sale in favor of the Delaware company, transferring to the latter all the good will, business of manufacturer of electrical appliances and apparatus and radios, and all the tools, machinery, stock in trade, accounts, and personal property of the New York company. On the same date, resolutions were adopted at meetings of the stockholders and directors of the two New York companies and the Delaware company for the transfer of all the assets of the New York companies to the Delaware company and for the acceptance of these transfers by the latter and for an assumption by it of the liabilities of the former. It is argued that these conveyances were void because they were not consented to by the "holders of record * * * entitled to vote thereon" of the outstanding shares of the grantor corporations, as required by section 20 of the New York Stock Corporation Law (Consol. Laws, c. 59). Leo Potter Incorporated was the beneficial owner of all the stock of the grantor, and voted in favor of the transfer. Though the transfers of stock to it on the books were not completed until some time in the month of February, 1927, because of its ownership of the beneficial interest, no one was prejudiced by this irregularity in the January conveyance of assets, and the subsequent transfers of stock validated the conveyances as of the dates when they took place.

■ There was sufficient evidence to justify the conclusion of the court below that the Delaware company succeeded to the business of its grantor on January 15, 1927, by occupying its office in Poughkeepsie and using the grantor's bank account there to meet its own payroll—all in accordance with the resolutions of directors and stockholders and the instruments of conveyance of that date (Fols. 113–118).

Under section 64a of the Bankruptcy Act (11 USCA § 104(a) the court was bound to order trustees in bankruptcy "to pay all taxes legally due and owing by the bankrupt to the United States, State, county, district, or municipality, in the order of priority. * * * *"

The bankrupt is a corporation foreign to the state of New York, and the license fees are claimed under sections 181 and 197 of the New York Tax Law (Consol. Laws, c. 60).

Section 181 provides that every foreign corporation doing business in this state shall pay a license fee of one-eighth of 1 per cent. on capital stock issued at a designated monetary value and employed by it within the state, and 6 cents on stock issued without designated monetary value and employed in this state "during the first year of carrying on its business in this state. * * * The measure of the amount of capital stock employed in this state shall be such a portion of the issued capital stock as the gross assets employed in any business within this state bear to the gross assets wherever employed in business."

Section 197 provides that the tax or fee imposed by section 181 "shall be due and payable immediately after the close of the first year of carrying on business in this state."

As we have already said, there is warrant for the finding that the bankrupt carried on business in the state of New York for more than a year prior to the date when the petition in bankruptcy was filed. Upon this assumption the finding by the court below of license fees due by the bankrupt estate to the amount of $13,484.58 was correct.

■ The franchise tax was assessed under section 209 and section 214 of the New York Tax Law (Consol. Laws, c. 60) as amended by chapter 323 of the Laws of 1925.

Section 209 provides that: "For the privilege of exercising its franchise in this state in a corporate or organized capacity every domestic corporation, and for the privilege of doing business in this state, every foreign corporation, * * * shall annually pay in advance for the year beginning November first next succeeding the first day of July in each and every year an annual franchise tax, to be computed by the tax commission upon the basis of its entire net income * * * for its fiscal or the calendar year next preceding, as hereinafter provided. * * * *"

Section 214, as amended by chapter 323 of the Laws of 1925, deals with the computation of the franchise tax. It provides

that: "* * * Every domestic corporation exercising its franchise in this state and every foreign corporation doing business in this state, other than those exempted by section two hundred and ten of this chapter, shall be subject to a minimum tax of not less than ten dollars and not less than one mill upon each dollar of such a part of its issued capital stock, at its face value, as the amount of its gross assets employed by it in its business in this state bears to its gross assets wherever employed by it in its business. But if such a corporation has stock without par value, then the base of the tax, with relation to such stock, shall be such a portion of such issued capital stock, at not less than its actual or market value, and not less than five dollars per share, as may be determined by the tax commission, as its gross assets employed in its business in this state bear to the entire gross assets employed in its business. Whenever a corporation organized prior to the first day of November in any year is not subject to a franchise tax based on its net income, as provided in section two hundred and nine of this article, it shall be subject to the minimum tax provided by section two hundred and fourteen of this article, based on its issued capital stock as of the thirty-first day of October succeeding the date of its incorporation, or, in the case of a foreign corporation, the date of its beginning business in this state. * * * "

Under the foregoing sections, a franchise tax amounting to $1,117.52 was claimed from the estate of the bankrupt by the state of New York, and a notice of such claim was filed by the State Tax Commission in the bankruptcy court. This was based upon 49 shares of preferred stock of the par value of $4,900 and 222,524 shares of common stock of no par value at $5 per share.

The appellant-trustees argue that under a proper construction of section 214 the bankrupt corporation at the time the petition was filed was subject only to the minimum franchise tax of $10. Their contention is that the words, "in the case of a foreign corporation the date of its beginning business in this state," fixed January, 1927, the time when the bankrupt obtained its license and began to do business in New York, rather than October 31, 1927, as the date when the amount of issued capital stock on which the franchise tax was to be based should be taken. Such a construction of section 214 would give foreign corporations doing business in the state an advantage over domestic corporations, whereas the whole scheme of the statute appears to put them on a parity.

In our opinion, section 214 means that the criterion for determining the franchise tax is, in the case of a domestic corporation, the amount of capital stock which may have been issued on the 31st day of October succeeding the date of its incorporation, and, in the case of a foreign corporation, the amount of capital stock which may have been issued on the 31st day of October succeeding "the date of its beginning business in this state." In other words, in each class of corporations the amount of capital stock outstanding on October 31 is the basis on which the franchise tax must be calculated. Any other construction does violence to the general plan of the statute, and, in many instances, would leave large corporate enterprises free from the payment of any substantial franchise taxes during the first year of beginning business in this state. Such a result is not called for by the language of the section, and could not have been contemplated.

The order of the District Court is affirmed.